Western Union Telegraph Company v. Mellor & Barnes.

Decided October 17, 1903.

**1.—Telegrams—Cipher Message—Notice.**

Where a message relating to the purchase of cotton, written in cipher, was delivered to an agent of the telegraph company without notice of its nature and importance, and the agent did not understand the cipher used, the company was liable, because of delay in forwarding, for only the fee received for transmission.

**2.—Same—Cipher Code—Notice Not Shown.**

Proof that the senders and other cotton dealers had for years been in the custom of sending messages in cipher, and that a copy of the cipher code used was in the office of nearly every cotton dealer, was not sufficient to charge the telegraph company with notice.

Appeal from the District Court of Navarro. Tried below before Hon. L. B. Cobb.

*N. L. Lindsley* and *Geo. A. Fearons,* for appellant.

*McKie & Autry,* for appellees.

RAINEY, Chief Justice.—Appellees sued to recover damages for delay in transmitting a certain message, claiming a loss in the sale of cotton, the price thereof having declined in the meantime. On a trial judgment was rendered gainst appellant. The evidence shows that the appellees, Mellor & Barnes, were engaged in the business of buying and selling cotton, and were so engaged in October, 1900. Barnes stays in America and Mellor in Liverpool, England. On October 14, 1900, A. K. Barnes delivered to the agent of appellant the following telegram: "Melobarn, Liverpool.—Adjutos admirative. Animically argreorum. Sailed Euskaro aprovecho," which being interpreted by a cipher code meant, "Have bought 200 bales on basis of middling at 5 11-32d. per pound, and 300 bales on the basis of middling at 5 5-16d. per pound. Can not repeat purchase now same price. Refer to our purchase of 28th. Sailed Euskaro. Weather favorable. Crop estimates are being raised." The appellant was negligent in transmitting this message, and the delay caused the damages complained of by appellees. The appellees have been, since 1893, buyers of cotton for sale in Europe, principally in Liverpool. During that time they made constant use of the Western Union Telegraph Company and also of the Postal Telegraph Company's services at Corsicana, Texas, and at other points in the United States and Europe in the matters pertinent to their business. They used a published cipher code in general use by persons in such like business. The appellant knew that persons engaged in the foreign cotton trade used the code messages for the purpose of economy in the transmission of messages, and had given appellees for use the cable address "Mellobarn," to which all the messages sent from America to Europe are directed. Said code is used by at

least nine-tenths of the cotton men, and a copy of the code is to be found in almost every cotton office in America. The message consists of words which if taken separately are unmeaning, but there is given in the code opposite each word the definition thereof, and when these words are used in cipher messages anyone having a code can translate the same. Cable messages are often sent in cipher pertaining to cotton business which do not refer to the purchase or sale of cotton, as for instance, as to the condition of the weather, or as to crop estimates, and which do not involve the purchase or sale of cotton. Messages between Europe and America are often sent in cipher, which if delayed in delivery or transmission would not involve any loss in dollars and cents. The message was delivered to one Kennedy for transmission, who had been working at Corsicana for only about two weeks. Prior to that time he had never handled any business as operator for the Western Union Telegraph Company. The message was delivered to him without any explanation as to its meaning. He knew that cotton dealers use a cipher code for their messages, but did not know the meaning of the cipher used, nor was he familiar with said code, and he did not know of the firm of Mellor & Barnes, nor the business in which they were engaged. Prior to this he had received several messages from Barnes. The Western Union Telegraph Company has no cipher code in its office. Appellees, since 1893, have made constant use of appellant's services in communication to and fro touching their business, sending and receiving hundreds of messages every cotton season, paying on an average of $250 or $300 per month, using for the purpose a code or cipher in general use by persons in such like business. The delay in sending the telegram was not attributable to the negligence of the operator at Corsicana, but to the condition of appellant's wire between Corsicana and Dallas.

For breach of contract to transmit a message telegraph companies are only liable for such damages as were or might reasonably have been considered within the contemplation of the parties at the time the contract was made, as a result likely to flow from a breach thereof.

It has been uniformly held in this State that a telegraph company is not liable for negligent delay in transmitting a message where it is not made acquainted with the nature of the matter to which it relates. This may be done by the message itself, or extraneous evidence.

In this case the message was in cipher wholly unintelligible to the appellant's agent, and he was in no way informed of its nature. This being so, the appellant is not liable for damages other than the fee paid for transmission, unless notice of the nature and importance can be imputed to appellant from the fact that it had been the custom for years for appellees and such other cotton dealers to send messages in cipher. This was not sufficient to charge appellant with notice. It was not shown that appellant had possession of the cipher code so used, or that it had in any manner familiarized itself with its contents, nor was it incumbent upon it to do so. It was not shown that any of its

agents at any time in the course of business had been made acquainted with it in any manner. But if so, it would not have been sufficient to render the appellant liable in this case. It was shown that all the messages sent in cipher did not relate to the sale of cotton, but that the cipher often related to matters pertaining to the cotton business where, if delay had resulted in transmission, no pecuniary loss would have occurred.

To have made the appellant liable for the loss in the sale of the cotton as claimed, notice should have been given to the agent of the nature of this particular message. The judgment will be reformed, giving appellees judgment only for $3.40, the fee paid for transmitting the message, with 6 per cent interest from the date of payment, appellees to pay cost of appeal.

*Reversed and rendered.*